Case 2:21-cv-00257 Document 52 Filed on 03/11/22 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
March 11, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00257 |
| | § | |
| TEXAS A&M UNIVERSITY - | § | |
| KINGSVILLE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION TO DISMISS

Plaintiff John Doe filed this action against Defendants Texas A&M University-Kingsville (University) and Mark Hussey in his official capacity as President of Texas A&M University-Kingsville (Hussey). Doe complains of due process and other procedural irregularities in connection with a Title IX complaint against him for sexual assault, which resulted in a decision to expel him from the University. More specifically, he alleges claims under Title IX for erroneous outcome and selective enforcement, Fourth and Fourteenth Amendment due process violations under § 1983, breach of contract, and negligence.

Before the Court is Defendants' Motion to Dismiss (D.E. 27),[1] arguing that this case is barred by Eleventh Amendment sovereign immunity and the lack of a waiver of

---

[1] Also pending before the Court is a motion for preliminary injunction. D.E. 3. Defendants combined their response to that motion with their motion to dismiss. The Court now addresses only the Defendants' motion to dismiss and carries the response to the motion for preliminary injunction with the case.

immunity under the Texas Tort Claims Act.  Defendants further argue that Doe has failed to state a claim upon which relief may be granted because he has not plausibly alleged a denial of due process rights, an erroneous outcome caused by gender bias, or selective enforcement based on gender bias.  Doe has responded (D.E. 47), declining to engage on the issues regarding the Texas Tort Claims Act, suggesting an amendment of his pleading to include a state constitutional claim for due process pursuant to the Texas Constitution, article I, § 19, and otherwise disputing Defendants' motion.  Defendants replied.  D.E. 51.

For the reasons set out below, the Court **GRANTS** the motion (D.E. 27).  The Title IX claims are **DISMISSED WITH PREJUDICE** and the Section 1983 and state law claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.  The request for leave to amend in Doe's response (D.E. 47) is **DENIED**.

## STANDARD OF REVIEW

**A.  Rule 12(b)(1)**

When a Federal Rule of Civil Procedure 12(b)(1) motion is filed together with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Rule 12(b)(1) requires dismissal for lack of subject matter jurisdiction if the court lacks statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The burden of proof is on the party asserting jurisdiction—Doe, here.  *Ramming*, 281 F.3d at 161.  In examining a Rule 12(b)(1) motion, the district court is empowered to

consider matters of fact that may be in dispute. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*. (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

### B. Rule 12(b)(6)

The test of pleadings under Federal Rule of Civil Procedure 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The requirement that the pleader show that he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Those factual allegations must then be taken as true, even if doubtful. *Id*. In other words, the pleader must make allegations that take the claim from conclusory to factual and beyond possible to plausible. *Id*. at 557. The Court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id*. at 681.

As noted, in a Federal Rule of Civil Procedure 12(b)(6) context, the court construes the facts alleged in the complaint as true. The court may also consider: (a) documents attached to the complaint or identified as central to the claims made therein; (b) documents attached to the motion to dismiss that are referenced in the complaint; and (c) documents that are subject to judicial notice as public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The court does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.

## FACTS

Jane Roe filed a sexual assault claim against John Doe approximately six months after an encounter in his apartment. The facts of the case are largely undisputed with respect to Doe providing Roe with alcoholic beverages (to the point that she vomited in his bathroom) and engaging in a number of sex acts. The issue is whether Jane Roe consented to the sex acts. Outcry witnesses who answered Roe's call to come and get her just after

the encounter testified that Roe's speech was slurred, she was having difficulty standing and walking, and she vomited in their presence. D.E. 10. She told them that Doe had choked her and raped her, recounting the nature of the sex acts to them. *Id.*

The University conducted a disciplinary hearing at which Doe was present with his attorney. He complains that he was not provided adequate time to prepare, was not afforded an opportunity to review original interview materials for witnesses, did not have a full and fair opportunity for cross-examination, was not permitted to offer his own evidence, and his statement regarding the encounter was misrepresented by the investigator. Doe complains that a bias in favor of Roe effectively shifted the burden of proof to him to disprove her allegations.

The case decision states:

> The hearing panel concluded that consent for the sexual acts was not obtained. The level of intoxication of the complainant made her incapable of providing consent, and the respondent knew or reasonably should have known about the complainant's inability to provide consent. The complainant also indicated that she stated verbally that she did not want to have sex with the respondent.

D.E. 11, p. 1. The sanction was expulsion from the University. *Id.* Doe appealed the decision, complaining of the noted procedural irregularities, omission of evidence, and bias. D.E. 13. The Designated Administrator affirmed the panel decision. D.E. 12.

## DISCUSSION

Doe's complaint (D.E. 1) lists five counts, asserting the following claims:

    I.    Title IX-Erroneous Outcome
    II.   Title IX-Selective Enforcement

      III. Section 1983 Due Process

      IV. Breach of Contract

      V. Negligence

As discussed below, Defendants' first challenge, based on sovereign immunity, addresses the last three counts: section 1983, breach of contract, and negligence. Defendants then challenge the first two, the Title IX counts, for pleading deficiencies.

### A. Sovereign Immunity Bars Doe's § 1983, Breach of Contract, and Negligence Claims

Doe has sued for damages, declaratory relief, and an injunction preventing his expulsion pursuant to 42 U.S.C. § 1983 and state law regarding breach of contract and negligence. Defendants argue that he is not entitled to any such relief because the claims are barred by sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution, which states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

It is well-settled that this sovereign immunity bar extends to suits against states by their own citizens. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Included in that bar is an individual sued in an official capacity that implicates the state. *Id.* at 101. And the University is a unit of the State of Texas. *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 595 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 216 (2021).

As the Fifth Circuit has written, this is a "jurisdictional roadblock." *Id*. "To establish jurisdiction, [the plaintiff] must invoke one of two exceptions to sovereign immunity. First, he could argue Congress validly abrogated the State's sovereign immunity. Second, he could argue the State knowingly and plainly waived its sovereign immunity and consented to suit." *Id*. (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)). But it is well-settled that Congress did not abrogate sovereign immunity from § 1983 claims. *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)). And Doe has declined to advance any argument that the Texas Tort Claims Act waived immunity for breach of contract or the tort alleged in this suit. *See* D.E. 47, p. 3 n.1.[2]

However, Doe argues more generally that the historical evolution of sovereign immunity and the Eleventh Amendment allows for his action. For this proposition, he cites *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). This case acknowledged that Congress could, and did from time to time, abrogate sovereign immunity. And an award of attorney's fees could be made under certain circumstances as having only an ancillary effect on a state's treasury. *Id*. at 457. But *Fitzpatrick* does not support a finding that sovereign immunity was abrogated for this § 1983 case.[3] And as set out above, the opposite is true.

---

[2] Doe does not respond specifically to Defendants' challenges to this Court's jurisdiction over his breach of contract and negligence claims. Instead, he seeks to justify the breach of contract claims by citation to state law cases and suggests that he also has a state law claim based on the right to due process under the Texas Constitution. The Court reads Doe's response as a waiver of any opposition to the Eleventh Amendment immunity argument preventing this Court from exercising jurisdiction over the state law claims.

[3] Doe's argument, starting with *Fitzpatrick* and encompassing *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 14 (1989), is defeated by the Supreme Court's overruling of *Union Gas*. "Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72 (1996). Doe's

The only recognized exception to sovereign immunity that Doe addresses is the exception for prospective injunctive relief:

> [I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Ex parte Young*, 209 U.S. 123, 155–56 (1908). Thus, the question is whether Doe seeks prospective relief for an ongoing violation of federal law. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298–299 (1997)). Defendants argue that the hearing and appeal are over and the sanction of expulsion has been determined, making any relief retrospective. Doe argues that until the expulsion is finally executed, any relief is prospective.

The disciplinary proceedings by which the University sanctioned Doe with expulsion are complete. The final decision was made and affirmed on appeal, with no further appellate remedies available. The only remaining step was to advise Doe that the decision was final and he was expelled. Doe's complaints here are not that there is an ongoing violation of federal law with respect to the letter notice of the decision but that the *past* hearing resulting in the final decision was infirm.

"[T]he [*Ex parte Young*] exception is narrow: It applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal

---

other case, *Hutto v. Finney*, 437 U.S. 678, 700 (1978), is inapposite in that it addresses attorney's fees awarded as costs in an *Ex parte Young* action.

law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Doe's effort seeks a declaration that the past hearing and its final judgment violated federal law. That is not within the narrow *Ex parte Young* exception. To adjudicate this case, the Court is not asked to look strictly to Defendants' conduct in providing notice of the final disciplinary decision. Doe has recited no violation of law in that specific act. Doe's complaint of federal law violations is directed only to the past conduct of the hearing. That is not within the *Ex parte Young* exception.

Doe has supplied no authority suggesting that Congress abrogated sovereign immunity for the § 1983 claim or the state law claims based on breach of contract and negligence.[4] Neither has he shown that Texas waived its immunity in any respect. His only argument for piercing immunity is that he filed suit before he received the letter giving him notice of the finality of the expulsion decision. Because this argument does not trigger the *Ex parte Young* exception, Doe's challenged claims do not survive the application of sovereign immunity.

The Court **DISMISSES** the § 1983 claim and the state law claims for breach of contract and negligence on the basis of Eleventh Amendment sovereign immunity, which acts as a jurisdictional bar. Because the Court does not have jurisdiction to consider those claims on the merits, it does not reach Defendants' Rule 12(b)(6) challenge to the sufficiency of the § 1983 allegations. *See* D.E. 27, pp. 19-23.

---

[4] Defendants do not assert that sovereign immunity bars any Title IX claims. It is clear that by accepting Title IX funds, the state waives its sovereign immunity with respect to claims calculated to enforce the act. *See* 42 U.S.C. § 2000d-7; *Pederson v. La. State Univ.*, 213 F.3d 858, 876 (5th Cir. 2000).

### B. The Title IX Pleadings Are Inadequate

#### 1. Erroneous Outcome

**Rubric**.  The Fifth Circuit has described the elements of an erroneous outcome case under Title IX as follows:

> A plaintiff alleging an erroneous outcome must point to particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding—for instance, a motive to lie on the part of a complainant or witnesses, or particularized strengths of the disciplined student's defense.  If no such doubt exists based *on the record before the disciplinary tribunal*, the claim must fail.  The plaintiff must also demonstrate a causal connection between the flawed outcome and gender bias.

*Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019) (citations and quotation marks omitted).

**Analysis**.  Defendants recite evidence from the disciplinary hearing in an effort to show that Doe's complaints are not meritorious.  D.E. 27, pp. 24-25.  Doe objects to this analysis as being more akin to a Federal Rule of Civil Procedure 56 summary judgment proceeding than a Rule 12 dismissal proceeding.  To a large extent, the Court agrees.  The task at hand is not to determine whether Doe was correctly disciplined, but whether he has stated a plausible claim that the outcome was erroneous and caused by gender bias.

The difficulty in parsing pleadings from evidence is that the rubric requires the pleading to put into contention a doubt as to the accuracy of the outcome based on gender bias ***as revealed by the record before the hearing panel***.  *Klocke*, 938 F.3d at 210 (establishing the elements of the claim); *Twombly*, 550 U.S. at 557 (requiring sufficient

10 / 16

factual allegations to make the claim plausible). Rule 12 may be used to dismiss claims on the pleadings because Title IX was not intended to make claims against recipient schools routinely available. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999) (discussing availability of Rule 12 relief and the deliberate indifference standard for Title IX sexual harassment claims). Doe's argument that the panel reached the wrong outcome because it improperly assessed credibility is not enough to allege an erroneous outcome based on gender bias.

Doe's claims as to the accuracy of the outcome address (a) whether Roe was sufficiently intoxicated as to be incapable of consent and (b) whether Doe should have known that she was that intoxicated—matters governed by credibility assessments on this record. Limiting the issue to the record before the panel, the Court does not have to reach Doe's assertions. The panel heard—and found—that Roe told Doe that she did not consent, making the issue of intoxication and capacity effectively moot for purposes of this case.

In sum, Roe provided the evidence necessary to support the decision and the panel found her credible. Doe's effort to shed doubt on the accuracy of the outcome is factually insufficient and the Court need not reach the issue of whether he could also attribute any doubt to gender bias. *See Klocke*, 938 F.3d at 212 (When the university's disciplinary decision was reasonable and justifiable on nondiscriminatory grounds, an inference of gender bias would necessarily be improperly speculative.). The Court **DISMISSES** Doe's Title IX erroneous outcome claim.

### 2. Selective Enforcement

**Rubric**. "A selective enforcement claim needs to allege that either punishment or the decision to initiate enforcement proceedings was motivated by gender bias." *Klocke,* 938 F.3d at 213. This type of claim is pursued by pleading sufficient facts to show that similarly situated female students were treated more favorably than was Doe, either anecdotally or statistically. *Id.*

**Analysis**. Doe makes no such allegations. His argument is limited to assertions that Roe, as a female complainant, was given dispositive deference over him, a male respondent. Without something to call into question whether male complainants are treated differently from female complainants or that female respondents are treated differently from male respondents, the selective enforcement claim fails. *See generally Gudgel v. Del Mar Coll.*, No. 2:16-CV-513, 2018 WL 472829, at *2 (S.D. Tex. Jan. 17, 2018); *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009).

The Court **DISMISSES** Doe's Title IX selective enforcement claim.

### 3. Jurisdiction

In his response, Doe argues that the University did not have jurisdiction or authority to consider the sexual assault claim against him because Roe was not a student of the University at the time of the "events and/or complaint," and the event took place off campus. D.E. 47, pp. 10-11. These issues were not part of the allegations in his complaint. D.E. 1. His pleading notes that the complainant need only be a student at the time the complaint is made in order for Title IX to apply. D.E. 1, p. 13. The pleading further states

that the disciplinary proceeding was initiated against Doe "**by (fellow student) Roe**" and that "**Roe is a female student** accusing a male student of sexual assault at Texas A&M University-Kingsville." D.E. 1, pp. 1, 11 (emphasis added). Thus, it appears that Roe was a student at the time of the complaint, according to the pleading which is taken as true under the standard of review. Doe's argument to the contrary was not specifically addressed by Defendants. It is not clear to the Court whether Roe was a student at the time of the event only or also at the time of the complaint.

Regardless, one of the cases Doe cites on the jurisdiction issue, *Victim Rights Law Center v. Cardona*, No. CV 20-11104-WGY, 2021 WL 3185743 *5 (D. Mass. July 28, 2021),[5] notes that Title IX does not supplant a university's disciplinary policies. And Doe has not shown that the general disciplinary power of the University did not extend to his actions.

Here, the complaint made against Doe was made pursuant to A&M System Policy 08.01 (Civil Rights Protections and Compliance) and A&M System Regulation 08.01.01 (Civil Rights Compliance) regarding "Title IX *or* Sex-based Misconduct." D.E. 10, pp. 1, 9-10 (emphasis added), 18-57. Moreover, a memo dated March 31, 2021, from the Title IX Coordinator to the parties, investigators, and hearing facilitator states, "Because the incident did not occur during a TAMUK education program or activity, this complaint will be dismissed under Title IX, but will proceed as a sex-based misconduct investigation."

---

[5] Order clarified on other grounds, No. CIV 20-11104-WGY, 2021 WL 3516475 (D. Mass. Aug. 10, 2021).

D.E. 10, p. 15. Therefore, Doe's jurisdictional argument—challenging only jurisdiction under Title IX—is misplaced.

The cases cited by Doe do not help him. In *Brown v. Arizona*, No. 20-15568, 2022 WL 212030, at *5 (9th Cir. Jan. 25, 2022), the sexual harassment victim sued the university for failure to intervene and control a student who was known to the university to engage in sexual harassment at an off-campus location. The court held that the private right of action provided by Title IX did not extend that far, stating that the university did not control the context where the victim was abused. The victim was not assaulted on school property or during a school-related activity, and she did not go to the off-campus apartment for a school-related purpose. *Id.* Here, Roe is not bringing this claim complaining that the University failed to act; Doe is bringing the claim complaining that the University did act. Whether similar limitations would apply to exempt Doe from disciplinary proceedings was not the issue in *Brown*.

In *Cardona*, the court considered challenges to the Final Rule which set new standards for actionable sexual harassment under Title IX, new procedures for Title IX investigations, and procedural safeguards for those accused of sexual harassment. The Final Rule also limits the application of Title IX for off-campus incidents. *Cardona,* 2021 WL 3185743 at *3. The court acknowledged that nothing in Title IX's scope prevents a school from taking actions under its code of conduct for matters not covered by Title IX. *Id*. at *5.

Doe has not pled the off-campus issue. And he does not brief any limitation on the University's disciplinary rules or its authority to enforce them. The Court rejects Doe's argument that the University did not have jurisdiction or authority to consider the sexual assault claim because the event took place off campus.

### C. Leave to Amend Is Denied and the Decision Is Without Prejudice as to State Law Claims

The Court has rejected Doe's state law claims on the basis of Eleventh Amendment sovereign immunity. Because of that immunity, Doe's suggested amendment to add a claim for due process under the Texas Constitution is futile. Leave to amend can be denied on the basis of futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the Court's dismissal of the claims on the basis of immunity is a jurisdictional one and is without prejudice to Doe's right to bring those claims in state court.

Additionally, Doe has suggested that he would like to amend to correct any perceived deficiencies after this Court rules on the motion to dismiss. D.E. 47, p. 12. A court need not grant a motion for leave to amend where the movant fails to specify what amendment is desired and how it would cure its pleading defects. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). When seeking to amend, the movant must set forth "with particularity the grounds for the amendment and the relief sought." *Id*. A "bare request in an opposition in a motion to dismiss" absent any particular grounds is inadequate. *Id*. The Court denies Doe's request for leave to amend in such a vacuum.

## CONCLUSION

For the reasons set out above, the Court **DISMISSES WITHOUT PREJUDICE** the § 1983, breach of contract, and negligence claims for lack of jurisdiction based on sovereign immunity. The Court **DISMISSES WITH PREJUDICE** the Title IX claims. This action, in its entirety, is **DISMISSED**.

ORDERED on March 11, 2022.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE